## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
### DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| **MILLENTINE COATES**, | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 3:18-cv-0035** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **FORD MOTOR COMPANY and XYZ** | ) | |
| **CORPORATION,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ATTORNEYS:**

**Robert L. King**
The King Law Firm, P.C.
St. Thomas, U.S.V.I.
        *For Plaintiff Millentine Coates,*

**Daryl C. Barnes**
**Paul R. Neil**
Barnes & Neil, LLP
Christiansted, U.S.V.I.
**Courtney M. King**
**Scott A. Richman**
**Jessica M. Kennedy**
McDonald Toole Wiggins P.A.
Orlando, FL
        *For Defendant Ford Motor Company.*

### <u>MEMORANDUM OPINION</u>

**MOLLOY, J.**

      Before the Court is the motion of Ford Motor Company to dismiss all claims against it pursuant to Federal Rule of Civil Procedure 12(b)(2). Millentine Coates filed a brief in opposition. Millentine Coates also requests that, if the Court determines that it lacks personal jurisdiction over Ford, the Court exercise its discretion to transfer this case pursuant to 28 U.S.C. §§ 1631, 1404, and 1406 to a district where the action could have been brought so that her claims will be preserved and adjudicated on the merits. For the reasons stated below, the

*Coates v. Ford Motor Company*
Case No. 3:18-cv-0035
Memorandum Opinion
Page 2

Court finds that it lacks personal jurisdiction over the defendant and will transfer this case to the Eastern District of Michigan.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 22, 2016, Millentine Coates ("Coates") was driving her 2002 Ford Explorer (the "Explorer") in St. Thomas, Virgin Islands. The Explorer's front driver airbag exploded. Subsequently, Coates lost control of the Explorer and crashed. Coates suffered multiple injuries to her knees, ankles, legs, and back.

On March 12, 2018, Coates filed a complaint against Ford Motor Company ("Ford") and XYZ Corporation ("XYZ")[1] in the Superior Court of the Virgin Islands. In her complaint, Coates alleges claims for products liability, breach of express and implied warranties, negligence, and breach of contract. On June 6, 2018, Ford removed the action to this Court.

On June 27, 2018, Ford moved to dismiss Coates's complaint for lack of personal jurisdiction. On August 23, 2018, Coates filed an opposition to Ford's motion to dismiss for lack of personal jurisdiction.

On September 20, 2018, Coates amended her complaint. Thereafter, on October 4, 2018, Ford again moved to dismiss Coates's amended complaint for lack of personal jurisdiction. On October 30, 2018, Coates filed an opposition to Ford's second motion to dismiss for lack of personal jurisdiction.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12, a defendant may move to dismiss a complaint for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Once challenged, "'[t]he burden of demonstrating the facts that establish personal jurisdiction,' falls on the plaintiff." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002)). "[W]hen the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97

---

[1] Coates named XYZ as a fictitious corporation representing the unknown corporation that manufactured and sold the airbags to Ford for installation in the Explorer.

*Coates v. Ford Motor Company*
Case No. 3:18-cv-0035
Memorandum Opinion
Page 3

(3d Cir. 2004). Additionally, "all inferences must be drawn in favor of [the plaintiff]." *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 158 (3d Cir. 2010).

To determine if personal jurisdiction is proper, the Court must assess: (1) whether jurisdiction is authorized by the forum's long-arm statute; and (2) whether the exercise of personal jurisdiction over the defendant would comport with due process under the United States Constitution, which requires that the defendants have certain minimum contacts in the forum. *Metcalfe*, 566 F.3d at 330.

The Virgin Islands long-arm statute provides:

(a)     A court may exercise personal jurisdiction over a person, who acts directly *or* by an agent, as to a claim for relief arising from the person's

    (1)     transacting any business in this territory;
    (2)     contracting to supply services or things in this territory;
    (3)     causing tortious injury by an act or omission in this territory;
    (4)     causing tortious injury in this territory by an act or omission outside this territory if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this territory;
    (5)     having an interest in, using, or possessing real property in this territory; or
    (6)     contracting to insure any person, property, or risk located within this territory at the time of contracting.
    (7)     causing a woman to conceive a child, or conceiving or giving birth to a child; or
    (8)     abandoning a minor in this Territory.

(b)     When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

V.I. Code Ann. tit. 5. § 4903 (1997).

Once a court determines that the defendant has contacts with the Virgin Islands that fall under section 4903(a), the court must then determine whether the plaintiff's claims arose from those contacts. *Molloy v. Independence Blue Cross*, 56 V.I. 155, 175 (2012). The Virgin Islands Supreme Court has adopted the Third Circuit's test under the constitutional jurisdiction doctrine of specific jurisdiction requiring that a claim "arise out of" the

defendant's contacts with the forum. *Id.* Thus, the plaintiff must "provide [the required] showing for each of their claims that (1) one of [the defendant]'s contacts with the Virgin Islands is a but-for cause of that claim; and (2) that the obligations and privileges that accompany that contact with the Virgin Islands are closely related to the cause of action." *Id.*

Due process requires that a foreign defendant have minimum contacts with the forum.[2] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). Additionally, "subjecting the defendant to the court's jurisdiction [must] comport[ ] with 'traditional notions of fair play and substantial justice.'" *Pinker*, 292 F.3d at 369 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Under this standard, "jurisdiction is proper if the defendant has taken 'action ... purposefully directed toward the forum state.'" *Id*. at 370 (quoting *Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal.*, 480 U.S. 102, 112 (1987)).

"There are two types of personal jurisdiction, general jurisdiction and specific jurisdiction." *D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009). General jurisdiction is based upon the defendant's "continuous and systematic" contacts with the forum and exists even if the plaintiff's cause of action arises from the defendant's non-forum related activities. *See Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co.*, 75 F.3d 147, 151 n.3 (3d Cir. 1996) (citations omitted). "[G]eneral jurisdiction . . . typically arises only when a corporation's 'affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State.'" *Malik v. Cabot Oil & Gas Corp.*, 710 F. App'x 561, 563 (3d Cir. 2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 761 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011))) (internal quotation marks omitted). Consequently, it is "incredibly difficult to establish general jurisdiction [over a corporation] in a forum *other* than the place of incorporation or principal place of business." *Chavez v. Dole Food Co.*, 836 F.3d 205, 223 (3d Cir. 2016) (quoting

---

[2] The Revised Organic Act incorporates by reference the Fifth Amendment and the second sentence of section I of the Fourteenth Amendment, the due process clause. 48 U.S.C. § 1561 (1976). In addition, Congress enacted a Bill of Rights for the territory, § 3 of the Revised Organic Act, which extends the federal constitution to the fullest extent possible to the Virgin Islands, as an unincorporated territory of the United States. *Id.; see also In re Brown*, 439 F.2d 47, 50-51 (3d Cir. 1971). Thus, the Revised Organic Act requires the same due process analysis that would be utilized under the federal constitution. *See Gov't of the V.I. v. Bodle*, 427 F.2d 532, 533 n.1 (3d Cir. 1970).

*Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014)) (alteration in original)(emphasis added in *Chavez*).

"Specific jurisdiction, by contrast, is present when the cause of action arises from the defendant's forum related activities." *Chavez*, 836 F.3d at 223. For specific jurisdiction, the Third Circuit has stated that due process necessitates that the plaintiff satisfy three requirements. First, the plaintiff must demonstrate that the defendant "purposefully directed [its] activities at the forum." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007) (alteration in original) (quoting *Burger King Corp.*, 471 U.S. at 472) (internal quotation marks omitted). "Second, the litigation must 'arise out of or relate to' at least one of those activities." *Id.* (quoting *Helicopteros Nacionales De Colombia v. Hall*, 466 U.S. 408, 414 (1984)). Third, if the plaintiff satisfies the first two requirements, "a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with fair play and substantial justice.'" *Id.* (alteration in original) (quoting *Burger King Corp.*, 471 U.S. at 476) (internal quotation marks omitted).

## III. DISCUSSION

### A. Virgin Islands Long-Arm Statute

Coates argues that the Court may exercise personal jurisdiction over Ford pursuant to the Virgin Islands long-arm statute, 5 V.I.C. § 4903, and the due process clause of the U.S. Constitution. Coates argues that Title 5, Section 4903(a)(4), of the Virgin Islands Code ("Section 4903(a)(4)") authorizes jurisdiction in this matter. Section 4903(a)(4) provides for personal jurisdiction when a defendant "[c]aus[es] tortious injury in this territory by an act or omission outside this territory if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this territory."

In *Hendrickson v. Reg O Company*, 657 F.2d 9 (3d Cir. 1981), the Third Circuit had an opportunity to address the reach of Section 4903(a)(4). In that case, Charles Winston Hendrickson brought suit in the District Court of the Virgin Islands to recover for injuries from an explosion caused by an allegedly defective valve on a propane tank. *Hendrickson*, 657 F.2d at 11.

*Coates v. Ford Motor Company*
Case No. 3:18-cv-0035
Memorandum Opinion
Page 6

The accident occurred on St. Croix during the course of Hendrickson's employment with the Carib Gas Corporation, when propane gas escaped from one of Carib's tanks through a valve. *Id.* The valve was manufactured by the defendant Reg O Company ("Reg O"), a Delaware corporation with its principal office in Chicago, Illinois. *Id.* Reg O manufactured, distributed, and sold component parts for propane cylinders. *Id.* The company's total annual sales were in excess of 35 million dollars. *Id.* It had no offices, agents, or distributors in the Virgin Islands, and was not registered to do business there. *Id.* Reg O moved to dismiss for lack of personal jurisdiction. *Id.* The district court denied Reg O's motion to dismiss, and then certified the issue for appeal. *Id.*

The Third Circuit affirmed the district court. *Id.* at 15. In rejecting Reg O's argument that its annual sales in the Virgin Islands of $1,800 were insubstantial in comparison with its annual sales of $35,000,000, the Third Circuit explained that

> [t]he test of substantiality . . . does not depend upon a comparison with the defendant's total sales, otherwise the statute would favor multibillion dollar corporations over those with smaller sales volumes. A ratio test would also put a party at a disadvantage in attempting to establish jurisdiction over a tortfeasor that is a gigantic corporation, and might even raise equal protection difficulties. The substantiality of the revenues must be measured by objective factors, not the size of the defendant. The volume of sales here, although slight in terms of its percentage of total sales, were not isolated or exceptional occurrences, but were part of a regular course of dealing.

*Id.* at 12-13 (citations omitted).

Here, Coates has alleged that her injury occurred within the territory due to alleged product defects originating outside the territory. Moreover, Coates has alleged that

> [t]here has never been a time in the past 60 years were [sic] Ford did not sell, distribute or market its new and used vehicles in the United States Virgin Islands. From a time before the 1950's through the present time, Ford has consistently, purposefully and systematically marketed and sold its vehicles either directly or through authorized representatives within the U.S. Virgin Islands and induced consumers within the Virgin Islands to purchase its vehicles.

> . . . Ford derives a portion of its gross income from the sales, services, parts and repair work that is derived from the activities of its dealerships in the US Virgin Islands.

Am. Compl. at ¶¶ 9, 11, ECF No. 20.  Under *Hendrickson*, such allegations are sufficient to establish that Ford regularly does or solicits business and derives substantial revenue from goods used and services rendered in the territory. As such, Coates has established that Ford's contacts fall within the category outlined by Section 4903(a)(4).

Having found that Ford's contacts fall under Section 4903(a)(4), the Court must also determine whether Coates's claims arise out of those contacts. *Molloy*, 56 V.I. at 174. Because the Virgin Islands' test for  whether a claim "arises out of" the defendant's contacts with the forum is coextensive with the Third Circuit's test under the constitutional jurisdiction doctrine of specific jurisdiction, the Court will address this question in its discussion of specific jurisdiction below.

## B.  Due Process

### 1.    General Jurisdiction

In this case, as Coates's Complaint acknowledges, Ford is a Delaware corporation with its principal place of business in Michigan. Am. Compl. at ¶ 4, ECF No. 20. It is "incredibly difficult to establish general jurisdiction [over a corporation] in a forum *other* than the place of incorporation or principal place of business." *Chavez v. Dole Food Co.*, 836 F.3d 205, 223 (3d Cir. 2016) (quoting *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014)) (alteration in original)(emphasis added in *Chavez*). As the Supreme Court has pointed out, "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Daimler*, 134 S. Ct. at 762 n.20.

In *Daimler*, a group of Argentinian residents filed a complaint in the United States District Court for the Northern District of California against DaimlerChrysler Aktiengesellschaft ("Daimler"), a German public stock company, headquartered in Stuttgart, that manufactured Mercedes-Benz vehicles in Germany. *Id.* at 120-21. The complaint sought damages for the alleged participation of Daimler's Argentinian subsidiary, Mercedes-Benz Argentina ("MB Argentina"), in human-rights violations in Argentina. *Id.* at 121. Jurisdiction was predicated on the California contacts of Daimler's subsidiary, Mercedes-Benz USA, LLC

("MBUSA"). *Id.* MBUSA was incorporated in Delaware with its principal place of business in New Jersey. *Id.* MBUSA distributed Daimler-manufactured vehicles to independent dealerships throughout the United States, including California. *Id.*

The Supreme Court found that Daimler's contacts with California did not support the exercise of general jurisdiction over Daimler in California. As explained by the *Daimler* Court, "the inquiry under *Goodyear* is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so "continuous and systematic" as to render [it] essentially at home in the forum State.'" *Id.* at 138-39 (citations omitted). The Supreme Court further clarified that

> the general jurisdiction inquiry does not "focu[s] solely on the magnitude of the defendant's in-state contacts." General jurisdiction instead calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise, "at home" would be synonymous with "doing business" tests framed before specific jurisdiction evolved in the United States. Nothing in *International Shoe* and its progeny suggests that "a particular quantum of local activity" should give a State authority over a "far larger quantum of . . . activity" having no connection to any in-state activity.

*Id.* at 139 n.20 (citation omitted). As such, the Supreme Court found that

> [h]ere, neither Daimler nor MBUSA is incorporated in California, nor does either entity have its principal place of business there. If Daimler's California activities sufficed to allow adjudication of this Argentina-rooted case in California, the same global reach would presumably be available in every other State in which MBUSA's sales are sizable. Such exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants "to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit."

*Id.* (citation omitted).

Coates has not argued or alleged any facts that would suggest this is the "exceptional case," *id.* at 761 n.19, where, although Ford is neither incorporated in nor has its principal place of business in the Virgin Islands, Ford has operations in the Virgin Islands "so substantial and of such a nature as to render [it] at home in that State," *id.*, for purposes of general jurisdiction. Indeed, Coates concedes in her brief in response to Ford's motion to dismiss that general jurisdiction is not supported in this matter. Op. to Ford Motor

Company's Mot. to Dismiss at 3, ECF No. 45. A plaintiff has the burden of making a *prima facie* showing in her complaint that a defendant is subject to general jurisdiction. *Decker v. Dyson*, 165 F. App'x 951, 952 (3d Cir. 2006). As Coates has not done so in her complaint, there can be no exercise of general jurisdiction over Ford in the Virgin Islands.

### 2.    Specific Jurisdiction

Coates argues that this Court has specific jurisdiction over Ford under a stream-of-commerce theory. The stream-of-commerce theory of personal jurisdiction "sounds in specific personal jurisdiction, which exists when alleged injuries 'arise out of or relate to' activities '"purposefully directed" by a defendant toward residents of the forum state.'" *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 780 (3d Cir. 2018) (quoting *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 334 (3d Cir. 2009)). "The stream-of-commerce theory contends, essentially, that specific personal jurisdiction exists over a non-resident defendant when that defendant 'has injected its goods into the forum state indirectly via the so-called stream of commerce,' rendering it foreseeable that one of the defendant's goods could cause injury in the forum state." *Id.* (quoting *D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 104-05 (3d Cir. 2009)).

> A plurality of Supreme Court Justices has twice rejected the stream-of-commerce theory, stating, in a manner consistent with [the Third Circuit's] case law, that plaintiffs must instead rely on "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Indeed, the Supreme Court has recently held that "[t]he bare fact that [a non-resident defendant] contracted with a [resident] distributor is not enough to establish personal jurisdiction in the State."

*Id.* (citations omitted).

As such, Coates must demonstrate that Ford purposefully directed its activities at the Virgin Islands and that her claims arise out of or relate to at least one of those activities. *See, e.g., Walden v. Fiore*, 571 U.S. 277, 284 (2014) (citation omitted) (emphasizing that specific jurisdiction "must arise out of contacts that the 'defendant *himself*' creates with the forum State").

In *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017), more than 600 plaintiffs, including some California residents and a large number of nonresidents from

various states, sued Bristol-Myers Squibb Company ("BMS") in a California state court asserting a variety of state-law claims based on injuries allegedly caused by a BMS drug called Plavix. "[T]he nonresidents were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. at 1781. As such, BMS moved to dismiss the claims brought by the nonresident plaintiffs for lack of personal jurisdiction. The California Supreme Court held that the California courts had specific jurisdiction to entertain the claims of the nonresident plaintiffs. Thereafter, BMS appealed.

The Supreme Court of the United States reversed, finding that the nonresidents' claims did not arise out of any contacts BMS had with California. The Supreme Court explained that "[t]he mere fact that other plaintiffs were prescribed, obtained, and ingested Plavix in California--and allegedly sustained the same injuries as did the nonresidents--does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Id.* The Supreme Court further emphasized that

> [a]s [it has] explained, "a defendant's relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction." This remains true even when third parties (here, the plaintiffs who reside in California) can bring claims similar to those brought by the nonresidents. Nor is it sufficient--or even relevant--that BMS conducted research in California on matters unrelated to Plavix. What is needed--and what is missing here--is a connection between the forum and the specific claims at issue.

*Id.* Because the "relevant plaintiffs [were] not California residents and [did] not claim to have suffered harm in that State" and "all the conduct giving rise to the nonresidents' claims occurred elsewhere," the Supreme Court concluded that the California courts could not claim specific jurisdiction over BMS for the nonresidents' claims.

In *D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94 (3d Cir. 2009), several plaintiffs sued a Swiss airplane manufacturing company, Pilatus Aircraft Ltd. ("Pilatus"), after one of the planes it sold crashed in Pennsylvania, killing all six people aboard. *D'Jamoos*, 566 F.3d at 98. Pilatus made all sales of the plane at issue in the United States through its Colorado-based United States subsidiary, Pilatus Business Aircraft, Ltd. ("PilBAL"). *Id.* PilBAL bought the planes from Pilatus, then sold them to contracted independent dealers, which, in turn, marketed and sold the planes to retail customers in their respective geographic areas. *Id.*

Pilatus was not involved directly in the sale of its planes in the United States, as PilBAL and its independent dealers were responsible for the advertising and marketing of the planes in the United States. *Id.* Additionally, Pilatus did not perform any maintenance in the United States on the planes it had manufactured. *Id.* Pilatus moved to dismiss the plaintiff's complaint for lack of personal jurisdiction. *Id.* at 100. The district court granted the motion to dismiss. *Id.* at 101.

In affirming the district court's finding of a lack of personal jurisdiction, the Third Circuit held that it was "absolutely fatal to appellants' stream-of-commerce argument that the subject aircraft did not actually enter Pennsylvania through a 'stream of commerce' as that term is generally understood—i.e., 'the regular and anticipated flow of products from manufacture to distribution to retail sale.'" *Id.* at 105 (quoting *Asahi Metal*, 480 U.S. at 117 (Brennan, J., concurring)).

> Any "stream" of planes from Pilatus to Pennsylvania would begin with Pilatus's manufacture of them and be followed by Pilatus's sale to them to PilBAL. Then PilBAL would distribute the planes to SkyTech, and finally SkyTech would sell the planes to buyers in Pennsylvania. It is by this path-from the Swiss manufacturing facility to PilBAL to regional dealer to end purchaser—that Pilatus targets the American market and intends and expects its aircraft to reach customers in the United States, including, arguably, those in Pennsylvania.

*D'Jamoos*, 566 F.3d at 105–06. The Third Circuit, however, also recognized that "[i]f the claim in this case had arisen out of these efforts to serve, even indirectly, the Pennsylvania market, then it would make sense to evaluate [the defendant's] conduct under the stream-of-commerce theory." *Id.* at 106.

In *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312 (3d Cir. 2007), Patrick O'Conner ("O'Conner") sued Sandy Lane Hotel Company for negligence after he slipped, fell, and injured his shoulder while receiving a massage treatment at the Sandy Lane Hotel ("Sandy Lane") in Barbados. The Sandy Lane Hotel Company was a Barbados corporation. Its sole business was the operation of Sandy Lane. O'Connor and his wife (collectively the "O'Connors") had stayed at Sandy Lane on a previous vacation. After the O'Connors' first stay at Sandy Lane, Sandy Lane started mailing seasonal newsletters to the O'Connors' home in Pennsylvania. Thereafter, the O'Connors decided to make a return trip.

*Coates v. Ford Motor Company*
Case No. 3:18-cv-0035
Memorandum Opinion
Page 12

After the O'Connors booked a second stay at Sandy Lane, Sandy Lane mailed them a brochure highlighting the treatments available at its on-site spa. The O'Connors decided to purchase various treatments. The scheduling of the treatments involved a series of phone calls between the O'Connors' in Pennsylvania and Sandy Lane. Ultimately, Sandy Lane agreed to provide certain spa treatments at specific dates and times in exchange for which the O'Connors agreed to pay a set price.

Thereafter, the O'Connors travelled to Barbados for their second stay at Sandy Lane. During one of O'Connor's booked treatments at the spa, he slipped and fell, injuring his shoulder. Subsequently, the O'Connors brought negligence claims against Sandy Lane in a state court in Pennsylvania. Sandy Lane removed the case to federal court where it was dismissed for lack of personal jurisdiction.

On appeal, the Third Circuit reversed. First, the Third Circuit explained that, to establish specific jurisdiction,[3] the O'Connors must show that Sandy Lane purposefully directed its activities at the forum--in that case, Pennsylvania.

> [W]hat is necessary is a deliberate targeting of the forum. Thus, the "unilateral activity of those who claim some relationship with a nonresident defendant" is insufficient. And contacts with a state's citizens that take place outside the state are not purposeful contacts with the state itself.

*Id.* at 317 (citations omitted). Analyzing the contacts alleged by the O'Connors, the Third Circuit found that some contacts did not meet the standard:

> First, the O'Connors claim they heard about the hotel from friends and travel agents in Pennsylvania. Sandy Lane, however, was not a party to these conversations, and they have no bearing on our jurisdictional inquiry. Second, the O'Connors rely on their [first] trip to Sandy Lane. This too lacks jurisdictional significance. Contact with vacationing Pennsylvanians is no substitute for contact with Pennsylvania. A Philadelphia vendor may sell a lot of cheesesteaks to German tourists, but that does not mean he has

---

[3] The Third Circuit did not consider whether there was general jurisdiction over Sandy Lane because "[t]he O'Connors conceded at oral argument that Sandy Lane lacks the 'continuous and systematic' Pennsylvania contacts needed to support general jurisdiction." *O'Connor,* 496 F.3d at 317.

> purposefully availed himself of the privilege of conducting activities within
> Germany.

*Id.* at 317-18 (citations omitted). Nevertheless, the Third Circuit found that Sandy Lane's

other claim-specific contacts did amount to purposeful availment.

> After the O'Connors' initial stay, Sandy Lane continued to cultivate the
> relationship by mailing seasonal newsletters to their Pennsylvania home. And
> after the O'Connors booked their [return] trip, Sandy Lane mailed them a
> brochure and traded phone calls with them for the purpose of forming an
> agreement to render spa services. Through these acts, Sandy Lane deliberately
> reached into Pennsylvania to target two of its citizens.

*Id.* at 318.

Having concluded that the O'Connors had established purposeful contact with

Pennsylvania by Sandy Lane, the Third Circuit proceeded to consider whether the O'Connors'

claims arose out of or related to at least one of those contacts. Reviewing the tests applied in

other jurisdictions, the Third Circuit declined to apply a bright-line test. Nevertheless, the

Third Circuit provided guidance for applying the standard in this Circuit.

> [A]lthough the analysis may begin with but-for causation, it cannot end there.
> The animating principle behind the relatedness requirement is the notion of a
> tacit quid pro quo that makes litigation in the forum reasonably foreseeable.
> Out-of-state residents who "exercise[ ] the privilege of conducting activities
> within a state . . . enjoy[ ] the benefits and protection of" the state's laws; in
> exchange, they must submit to jurisdiction over claims that arise from or relate
> to those activities. . . .
>
> . . . [I]n the course of this necessarily fact-sensitive inquiry, the analysis should
> hew closely to the reciprocity principle upon which specific jurisdiction rests.
> With each purposeful contact by an out-of-state resident, the forum state's
> laws will extend certain benefits and impose certain obligations. Specific
> jurisdiction is the cost of enjoying the benefits. . . . The relatedness
> requirement's function is to maintain balance in this reciprocal exchange. In
> order to do so, it must keep the jurisdictional exposure that results from a
> contact closely tailored to that contact's accompanying substantive
> obligations. The causal connection can be somewhat looser than the tort
> concept of proximate causation, but it must nonetheless be intimate enough to

*Coates v. Ford Motor Company*
Case No. 3:18-cv-0035
Memorandum Opinion
Page 14

> keep the quid pro quo proportional and personal jurisdiction reasonably
> foreseeable.

*Id.* at 322-23 (citations omitted).

Applying those principals to the case at bar, the Third Circuit first found that "Sandy Lane's Pennsylvania contacts are a but-for cause of [] O'Connor's injury" because O'Connor "decided to purchase spa treatments 'as a result' of Sandy Lane's solicitation." *Id.* at 323. Moreover, the Third Circuit found that the link between Sandy Lane's solicitation of the O'Connors and O'Connor's injury was much closer than mere but-for causation.

> Pennsylvania law allows individuals and businesses to make and enforce
> binding agreements. Sandy Lane availed itself of that opportunity, and,
> through its mailings and phone calls to Pennsylvania, it formed a contract for
> spa services. The hotel acquired certain rights under that contract, and with
> those rights came accompanying obligations. Like all services contracts, the
> spa agreement contained an implied promise that Sandy Lane would "exercise
> due care in performing the services required." In the case before us, the
> O'Connors contend that Sandy Lane failed to do exactly that. As such, their
> claims directly and closely relate to a continuing contractual obligation that
> arose in Pennsylvania.
>
> . . . It is enough that a meaningful link exists between a legal obligation that
> arose in the forum and the substance of the plaintiffs' claims. The O'Connors
> claim Sandy Lane breached a duty that is *identical* to a contractual duty
> assumed by the hotel in Pennsylvania. So intimate a link justifies the exercise
> of specific jurisdiction as a quid pro quo for Sandy Lane's enjoyment of the
> right to form binding contracts in Pennsylvania.

*Id.* (citations omitted). As such, the Third Circuit held that the O'Connors' claims arose out of Sandy's Lane's Pennsylvania contacts.

In *Rocke v. Pebble Beach Company*, 541 F. App'x 208 (3d Cir. 2013), the Third Circuit considered factual circumstances similar to those in *O'Connor*. In *Rocke*, Susan Rocke ("Rocke") and her husband (collectively the "Rockes") sued Pebble Beach Company ("Pebble Beach") in Pennsylvania after she slipped, fell, and struck her head while walking in a resort operated by Pebble Beach in California. To support their claim of personal jurisdiction over Pebble Beach, the Rockes alleged that

> they received advertisements soliciting business in the form of mailings and
> emails from Pebble Beach. The Rockes further allege their decision to visit the
> Lodge was based on these advertisements. In addition to the advertisements,
> Pebble Beach maintains an interactive website on which Pennsylvania

>    residents can make reservations, as well as a toll-free telephone number that
>    Pennsylvania residents may use. However, the Rockes did not take advantage
>    of these resources to make their reservations. Instead, Rick Johnson, a friend
>    of the Rockes who is a resident of Ohio, made the reservations.

*Rocke*, 541 F. App'x at 209. After Pebble Beach moved to dismiss for lack of personal

jurisdiction, the District Court dismissed the action. The District Court also denied the

Rockes' request to conduct jurisdictional discovery. Thereafter, the Rockes appealed.

Explaining that "[i]solated or sporadic contact absent a showing of deliberate action

is insufficient to establish the minimum contacts required to establish specific jurisdiction,"

*id.* at 211, the Third Circuit found that the "unspecified amount of advertising material [sent

by Pebble Beach] to [the Rockes] via mail and emails," *id.*, did not meet the threshold

required to establish specific jurisdiction. Comparing with *O'Connor*, the Third Circuit

explained that

>    [t]he defendants in *O'Connor* used mailings and emails to cultivate a
>    relationship with the O'Connors and to solicit additional business directly
>    from them. The mailings addressed the O'Connors' particular interests, unlike
>    the generic advertisements provided to the Rockes. In short, the contacts here
>    are more impersonal, irregular and general than that required by the *O'Connor*
>    standard.

*Id.*

With respect to the interactive website operated by Pebble Beach, the Third Circuit

reiterated its previous observation that

>    the mere operation of a commercially available web site should not subject the
>    operator to jurisdiction anywhere in the world. Rather, there must be evidence
>    that the defendant "purposefully availed" itself of conducting activity in the
>    forum state, by directly targeting its web site to the state, knowingly
>    interacting with residents of the forum state via its web site, or through
>    sufficient other related contacts.

*Id.* at 211-212 (citation omitted). Because "nothing in the record [suggested] the web site

directly targeted Pennsylvania, or that Pebble Beach knowingly interacted with

Pennsylvania residents through the web site," *id.* at 212, the Third Circuit found that "Pebble

Beach's interactive website also fails to qualify as purposeful contact." *Id.* at 211.

Having concluded that the record before court failed to establish specific jurisdiction,

the Third Circuit concluded that the District Court abused its discretion in denying the

Rockes' request for jurisdictional discovery. As such, the Third Circuit vacated the District Court's order dismissing the case for lack of personal jurisdiction and remanded to allow the Rockes' to conduct jurisdictional discovery.

*Bristol-Myers Squibb*, *D'Jamoos*, *O'Connor*, and *Rocke* are all instructional here. In this case, Coates has pleaded that

> Ford spends millions of dollars per year in marketing its products in North America including the United States Virgin Islands. This advertising takes the form of television, magazine, internet, and brochure advertising all designed to promote the marketability of Ford's products, within and without the Virgin Islands.
>
> . . .
>
> Advertisements and marketing materials were and are targeted to Virgin Islands residents to entice them to purchase Ford vehicles and Ford services, including the subject model vehicle and have been successful in accomplishing the objective of obtaining sales of the Ford Explorer.
>
> For decades, Ford has made and distributed dozens upon dozens of advertisements or commercials or other marketing materials touting the safety of Ford vehicles and how much Ford cares\cared about safety. Ford did this in all 50 states including the US Virgin Islands. Ford did this advertising to entice customers and ultimate consumers to (1) purchase Ford vehicles-whether used or new; (2) to drive Ford vehicles-whether used or new; and (3) to ride in Ford vehicles-whether used or new. Ford conducted these advertising campaigns and knew that consumers would rely upon its statements when deciding whether to purchase a Ford vehicle, whether to drive a Ford vehicle, and whether to ride in a Ford vehicle
>
> The Plaintiff, Millentine Coates, over the years has seen and heard Ford's advertisements and commercials and has been enticed by these and other marketing materials touting the safety of Ford vehicles and how much Ford cared/cares about safety. Absent being exposed to such advertising plaintiff would not have purchased the Ford Explorer that is the subject of this lawsuit.

Am. Compl. at ¶¶ 18, 28-30, ECF No. 20. Because the Court has not held an evidentiary hearing with respect to its exercise of personal jurisdiction over Ford in this matter, the Court must take the allegations in Coates's complaint as true. Given Coates's allegation that she "would not have purchased the Ford Explorer that is the subject of this lawsuit" absent being exposed to Ford's advertisements and commercials in the Virgin Islands, Coates has

established that such advertisements and commercials were the but-for cause of her claims. Nevertheless, as *O'Connor* instructs, Coates must establish more than mere but-for causation.

In this case, Coates was permitted to conduct jurisdictional discovery with respect to Ford's contacts with this forum. Coates has pleaded that Ford advertises its products in the Virgin Islands, that Coates was enticed by such advertisements to purchase her 2002 Ford Explorer, that Ford trains and certifies mechanics to repair its products in the Virgin Islands, and that Coates received a recall notice for which she brought her Ford Explorer to a Ford dealership for repairs. Am. Compl. at ¶¶ 22-23, 28, 30-31, ECF No. 20. Significantly, Coates did not purchase the Ford Explorer that is the subject of this lawsuit directly from Ford. Rather, Coates purchased the Ford from a third-party seller with no alleged relationship to Ford. Moreover, Coates purchased the Ford in a different jurisdiction. Indeed, in Coates's opposition to Ford's motion to dismiss for lack of personal jurisdiction, Coates admits that she "purchased a used Ford Explorer that was not designed, manufactured, or sold" in the Virgin Islands. *See* Amended Opp. to Ford Motor Co.'s Mot. to Dismiss and Alternative Mot. to Transfer at 5, ECF No. 45.

Similar to the nonresident plaintiffs in *Bristol-Myers Squibb*, Coates' claims cannot arise out of Ford's contacts with other residents of the Virgin Islands. Indeed, the Supreme Court's observation in *Bristol-Myers Squibb* that the mere fact that BMS had sufficient contacts with other plaintiffs in the forum--the California residents--did not allow California to assert specific jurisdiction over claims without sufficient contacts has equal application here. The fact that Ford may sell its vehicles directly to other residents in the Virgin Islands does not bolster Coates's case. *See, e.g., Goodyear*, 564 U.S. at 930 n.6 (noting that "even regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales"). Moreover, as in *D'Jamoos*, Coates's Ford Explorer did not enter the Virgin Islands through any action of Ford. Given this, Coates must offer something more to establish that her claims arise out of Ford's efforts to serve the Virgin Islands market.

Here, Ford's only contact with the Virgin Islands that arguably gives rise to Coates's claims is the advertising that allegedly enticed Coates to buy the used Ford Explorer at issue.[4] Significantly, Coates does not allege that Ford's advertisements were targeted particularly at her, or the Virgin Islands, in any way. Rather, Coates simply alleges that Ford markets its vehicles "in all 50 states including the US Virgin Islands." Am. Compl. at ¶ 29, ECF No. 20. The Court is not convinced that such a national advertising campaign alone can establish specific jurisdiction. *Cf. Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 700 n.10 (3d Cir. 1990) (noting that non-resident defendant's marketing strategy, including advertising in national publications distributed in the forum, provided, at best, tangential support for specific personal jurisdiction). Like in *Rocke* and unlike in *O'Connor*, the advertisements which Coates alleges enticed her to purchase a used Ford Explorer, were "generic advertisements," *Rocke,* 541 F. App'x at 211, which did not seek to "cultivate a relationship," *id.*, with Coates, "solicit business directly from," *id.*, Coates, or address Coates's "particular interests," *id.*[5] As such, the Court finds that Coates has not established that her claims arise out of Ford's contacts with the Virgin Islands. Thus, the Court concludes that it lacks personal jurisdiction over Ford with respect to Coates's complaint.

## C.  Transfer under 28 U.S.C. § 1631

Coates has requested that, if the Court determines that it lacks personal jurisdiction over Ford,  the Court exercise its discretion to transfer this case pursuant to 28 U.S.C. §§ 1631, 1404, and 1406 to a district where the action could have been brought, so that her claims

---

[4] While Coates has alleged that she received a recall notice for which she brought her Ford Explorer to a Ford dealership for repairs, she does not allege that the recall notice or the unspecified repairs were related to the airbag explosion that she alleges caused her injuries.

[5] Coates relies on *Antonini v. Ford Motor Company*, 2017 WL 3633287 (M.D. Pa. Aug. 23, 2017), a case with a very similar fact pattern to this case, to support her argument that this Court has personal jurisdiction over Ford with respect to Coates's claims. In *Antonini*, Katherine Antonini, a Pennsylvania resident, purchased a used vehicle from a third party in different forum, after which Antonini brought the vehicle to Pennsylvania. Thereafter, Antonini was involved in an accident in Pennsylvania. Antonini brought a products liability suit against Ford in Pennsylvania, alleging that the vehicle was not reasonably crashworthy. The Middle District of Pennsylvania relied on Antonini's allegations that Ford advertised heavily in Pennsylvania and that "had [Antonini] 'not seen [Ford's] advertisements or commercials or other marketing materials touting the safety of Ford vehicles, and how much Ford cared/cares about safety, [she] would not have been in the subject vehicle on the date of the accident," *id.* at *3, to find that the court had personal jurisdiction over Ford. That court's reliance on Ford's advertising in Pennsylvania to support the court's exercise of personal jurisdiction over Ford is not persuasive in light of *O'Connor* and *Rocke.*

will be preserved and adjudicated on the merits. Coates asserts that, "according to Ford, it may only be sued in the court of its state of incorporation, Delaware, or where its principal offices are located, Dearborn, Michigan." *See* Amended Opp. to Ford Motor Co.'s Mot. to Dismiss and Alternative Mot. to Transfer at 6, ECF No. 45; *see also* Mem. of Law in Support of Mot. to Dismiss at 2, ECF No. 26 ("Ford is a Delaware corporation with its principal place of business in Dearborn, Michigan."). Ford has not responded to Coates's request to transfer this case to either Michigan or Delaware.

Pursuant to 28 U.S.C. § 1631, if a civil action is filed in a court that "finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed." 28 U.S.C. § 1631. "[A] district court that lacks personal jurisdiction must at least consider a transfer." *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 132 (3d Cir. 2020). Where a court lacks personal jurisdiction and determines that a transfer is appropriate, the court should order the transfer and deny any motion to dismiss for lack of personal jurisdiction as moot. *See Subsalve USA Corp. v. Watson Mfg., Inc.*, 462 F.3d 41, 43 (1st Cir. 2006) ("A dismissed action is a nullity, so a court desirous of effectuating a transfer under section 1631 should not dismiss the action but, rather, after making a finding that it lacks jurisdiction, should order transfer based on that finding."); *cf. Herman v. Cataphora, Inc.*, 730 F.3d 460, 463 (5th Cir. 2013) ("The district court recognized it was faced with a choice whether to dismiss or transfer. . . . In its order, though, the court did both. We conclude that only one of the orders can be effective.").

Coates's claims sound in products liability. The accident giving rise to this action occurred on September 22, 2016. The statute of limitations in Michigan for such claims is three years. *See* MCL 600.5805(2) ("Except as otherwise provided in this section, the period of limitations is 3 years after the time of the death or injury for all actions to recover damages for the death of a person or for injury to a person or property."). The statute of limitations in Delaware for such claims is two years. *See* Del. Code Ann. tit. 10, § 8119 ("No action for the recovery of damages upon a claim for alleged personal injuries shall be brought after the expiration of 2 years from the date upon which it is claimed that such alleged injuries were

*Coates v. Ford Motor Company*
Case No. 3:18-cv-0035
Memorandum Opinion
Page 20

sustained."). Given these limitations periods, Coates would be barred from filing an action in either Michigan or Delaware if the Court does not transfer her case pursuant to 28 U.S.C. § 1631. As such, the Court finds that the interests of justice demand transfer of this case. *See Schwilm v. Holbrook*, 661 F.2d 12, 16 (3d Cir. 1981) (concluding that "[t]ransfer of venue under 28 U.S.C. § 1404(a) [was] particularly appropriate" in the case at bar where "[f]ailure to transfer would result in extinction of any claim in any forum"); *cf. Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 133 (3d Cir. 2020) (noting that "[i]f a plaintiff may, on its own, refile its case in a proper forum, "the interests of justice" do not demand transfer").

Consequently, the Court must determine whether to transfer this matter to Michigan or Delaware, both locations in which Ford is "at home" and thus subject to general jurisdiction. The subject Ford Explorer at issue in this matter was "designed in Michigan, manufactured in Kentucky, and then sold by Ford to a New York dealership," *see* Mem. of Law in Support of Mot. to Dismiss at 2, ECF No. 26, and has no apparent ties to Delaware. The accident causing Coates's injuries occurred in the Virgin Islands. Because the claims asserted by Coates may depend on issues relating to the design of the Ford Explorer at issue, the Court finds it appropriate to transfer this case to Michigan, specifically, the Eastern District of Michigan where Ford's principal place of business is located.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, the Court concludes that it lacks personal jurisdiction over Ford in this matter. Nevertheless, pursuant to 28 U.S.C. § 1631, the Court finds that the interests of justice demand a transfer to a court where this action could have been brought. As such, the Court will transfer this case to the Eastern District of Michigan and deny Ford's motion to dismiss at moot. An appropriate order follows.

**Dated: May 14, 2020**                    *s/ Robert A. Molloy*
                                                          **ROBERT A. MOLLOY**
                                                          **District Judge**